UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BRIAN COLLINS,<br><br>            Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>            Defendant. | CASE NO.    C08-5092BHS-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for December 12, 2008 |

Plaintiff, Brian Collins, has brought this matter for judicial review of the denial of his applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Benjamin H. Settle's review.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

Plaintiff currently is 51 years old.[1] Tr. 43. He has a high school education and past work

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

experience as a psychiatric aide. Tr. 27, 73, 89.

On July 14 and July 21, 2004, plaintiff filed an application for SSI and an application for disability insurance benefits respectively, alleging disability as of January 1, 1994, due to mental health problems, muscle pain and shortness of breath. Tr. 19, 54, 83, 267. His applications were denied initially and on reconsideration. Tr. 43-45, 50, 271-72, 276-77. A hearing was held before an administrative law judge ("ALJ") on July 19, 2006, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 323-72.

On August 14, 2006, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2) at step two, plaintiff had a "severe" impairment consisting of a schizoaffective disorder;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) after step three but before step four, plaintiff had the residual functional capacity to perform work at all exertional levels, with certain additional non-exertional limitations;

(5) at step four, plaintiff could not return to his past relevant work; and

(6) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 19-28. Plaintiff's request for review was denied by the Appeals Council on January 16, 2008, making the ALJ's decision the Commissioner's final decision. Tr. 6-11; 20 C.F.R. § 404.981, § 416.1481.

On February 15, 2008, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1). The administrative record was filed with the Court on April 23, 2008. (Dkt. #8). Plaintiff argues the ALJ's decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings for the following reasons:

(a) the ALJ erred in finding plaintiff did not have a medically determinable hand impairment;

---

[2]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

(b) the ALJ erred in finding plaintiff did not have headaches which constituted a medically determinable impairment; and

(c) the mid-August 2006 declaration of Darlene Wood, Ph.D., plaintiff's treating psychologist, which was submitted for the first time to the Appeals Council, warrants a finding of disability.

The undersigned agrees that the ALJ erred in determining plaintiff to be not disabled, and, for the reasons set forth below, recommends that the ALJ's decision be reversed, and that this matter be remanded to the Commissioner for an award of SSI benefits and for further administrative proceedings in accordance with the findings contained herein.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I. Plaintiff's Date Last Insured

To be entitled to disability insurance benefits, plaintiff "must establish that [his] disability existed on or before" the date his insured status expired. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); see also Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security statutory scheme requires disability to be continuously disabling from time of onset during insured status to time of application for benefits, if individual applies for benefits for current disability after expiration of insured status). Plaintiff's date last insured was December 31, 1998. Tr. 43. Therefore, to be entitled to disability insurance benefits, plaintiff must establish he was disabled prior to or as of that date. Tidwell, 161 F.3d at 601.

II. Medically Determinable Impairment

To be found disabled, a claimant must establish that he or she is unable to "to engage in any

substantial gainful activity by reason of a medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508, § 416.908. It "must be established by [objective] medical evidence consisting of signs, symptoms, and laboratory findings, not only by" the claimant's statement of his or her symptoms. Id.; see also 20 C.F.R. § 404.1529(a), § 416.929(a).

As noted, the existence of a medically determinable impairment may not be established "on the basis of symptoms alone." Social Security Ruling ("SSR") 96-4p, 1996 WL 374187 *1 ("[R]egardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings."); see also 20 C.F.R. § 404.1529(a), § 416.929(a). Thus, "[n]o symptom or combination of symptoms by itself can constitute a medically determinable impairment." SSR 96-4p, 1996 WL 37487 *2. In those disability claims "in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment," therefore, a claimant must be found not disabled at step two of the sequential disability evaluation process. Id.

Manifestations "such as pain, fatigue, shortness of breath, weakness or nervousness, are an individual's own perception or description of the impact of his or her physical or mental impairment(s)," and, as such, constitute "symptoms" rather than "signs" or "laboratory findings." Id. at *1 n.2; see also 20 C.F.R. § 404.1528(a), § 416.928(a) (symptoms are individual's own description of his or her physical or mental impairment). When such manifestations constitute "anatomical, physiological, or psychological" abnormalities which "can be shown by medically acceptable clinical diagnostic techniques," however, they represent medical "signs" rather than "symptoms." SSR 96-4p 1996 WL 37487 *1 n.2; see also 20 C.F.R. § 404.1528(b), § 416.928(b). "Laboratory findings," in turn, are defined as "anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques." 20 C.F.R. § 404.1528(c), § 416.928(c)).

A.  Plaintiff's Hand Impairment

In this case, the ALJ noted that while plaintiff alleged "problems with his fingers," he found there to be "absolutely no objective evidence of" such "finger complaints." Tr. 22. Plaintiff argues the ALJ erred in so finding. The undersigned agrees. In the medical history section of a hospital progress note that was completed in early May 2006, plaintiff was noted to have "contractures of his left fifth and right fourth and fifth proximal interphalangeal joints of his hands." Tr. 178. It seems, though, that statements concerning medical history from a treating or other source do not constitute objective medical evidence. See 20 C.F.R. § 404.1529(a), § 416.929(a).

Physical examination findings obtained in mid-May 1996, however, did reveal that plaintiff had moderate to severe "contracture of his right hand, of the #3, #4 and #5 fingers." Tr. 192-93. Plaintiff also was found to have "some contracture . . . with a vertical palmar scar noted on the left hand as well with a minimal amount of contracture of the #4 no acute distress [sic] #5 digits." Tr. 193. In late August 1999, a review of symptoms noted "[c]hronic contracture of the right ring finger due to Dupuytren's contracture." Tr. 213. This notation too, though, appears to be more similar to a statement of medical history than to objective clinical findings. In addition, a neurological evaluation of plaintiff performed in mid-October 2004, gave no indication of any issues relating to plaintiff's hands. See Tr. 239-41.

With respect to the lack of findings in mid-October 2004, plaintiff argues that no range of motion testing was performed on his fingers. However, it is not at all clear that range of motion testing would be required in order to find a hand-related impairment or limitation. Indeed, as noted above, moderate to severe contracture was observed in plaintiff's right hand following an apparently thorough neurological evaluation in mid-May 1996, without any specific reference to range of motion testing being performed. Nevertheless, contrary to the ALJ's findings, those previous mid-May 1996 physical examination findings themselves constitute objective medical evidence of a hand-related impairment.

The undersigned further disagrees with defendant that such an error was harmless. An error will be deemed harmless only if it is "inconsequential" to the ALJ's "ultimate nondisability determination." Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion). There is evidence in the record that plaintiff's hand impairment may have had more than a minimal effect on his ability to do work-

related tasks, and thus is relevant to the ALJ's ultimate disability determination. For example, testimony provided at the hearing indicated that some of the fingers on plaintiff's right hand, his dominant hand, are still contracted, and that such contracture interferes with his ability to use that hand. Tr. 331-32. Further, the vocational expert testified that based on such testimony and on his observations of plaintiff's fingers at the hearing, he would not consider placing plaintiff in the other jobs he identified as plaintiff being able to do, and was not certain he could do at least one of those jobs. See Tr. 362-63.

Plaintiff, on the other hand, did not identify any hand-related problems in the activity functioning report he completed when applying for disability benefits, nor did his mother who apparently lives with him. See Tr. 93-100, 104-11. Given the mixed nature of the evidence in this case regarding the effects of plaintiff's hand impairment, however, and the ALJ's duty to fully and fairly develop the record, the ALJ should have determined whether or not that impairment was severe, and, if so, what impact, if any, it had on plaintiff's residual functional capacity. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ's failure to do so here was harmful error. As explained below, this matter should be remanded to the Commissioner for further consideration of this issue.

B. Plaintiff's Headaches

The ALJ further noted that while plaintiff often complained of "cluster headaches," there also was "no objective evidence" thereof in the record. Tr. 22. The ALJ further found in relevant part:

> . . . The claimant's headache complaints were evaluated by neurologist Keyi Yang, M.D., Ph.D., in October of 2004, who called the claimant's case "interesting," but found no abnormal findings on neurological examination. Ex 11F/2, 5. The claimant's clinical presentation and history suggested cluster headache, possibly complicated with migraine and tension headaches. I note that these were not established with any objective testing or clinical signs. . . .

Tr. 23. The ALJ went on to state that because plaintiff's cluster headaches "were not established by medically acceptable clinical and laboratory techniques," they did not represent a medically determinable impairment. Id.

Plaintiff argues substantial evidence does not support the ALJ's determination here as well. Once more, the undersigned agrees. It is true that Dr. Yang found "no focal abnormal findings" in performing his neurological examination of plaintiff. Tr. 241. The ALJ, however, erroneously presumed Dr. Yang's statement that plaintiff's clinical presentation suggested he had recurrent cluster headaches, which were possibly complicated with migraine and tension headaches, did not constitute objective medical evidence

REPORT AND RECOMMENDATION
Page - 6

1 of cluster headaches. Id. Dr. Yang's statement here does not appear to be merely a statement regarding
2 medical history, diagnoses, prescribed treatment, daily activities, and efforts to work, which are not viewed
3 as being objective medical evidence. See 20 C.F.R. § 404.1529(a), § 416.929(a).

4 Rather, Dr. Yang, in so stating, was giving his medical opinion concerning plaintiff's impairment
5 based on how plaintiff presented during the examination, which is recognized by at least one circuit court
6 as constituting a medically acceptable diagnostic technique. See Flanery v. Chater, 112 F.3d 346, 350 (8th
7 Cir. 1997) (patient's report of complaints or history is essential diagnostic tool, and any medical diagnosis
8 must necessarily rely upon patient's history and subjective complaints). The undersigned thus finds that
9 the ALJ erred in not recognizing this as well. In contrast to the ALJ's findings concerning plaintiff's hand
10 impairment, however, the undersigned finds this error to be harmless. This is because there is no medical
11 evidence in the record that plaintiff's headaches caused him any work-related limitations.

12 Plaintiff argues defendant has failed to prove the ALJ's error here was harmless, but it is plaintiff
13 who has the burden of proving that his cluster headaches constitute a severe impairment. See Edlund v.
14 Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001) (plaintiff has burden of showing his impairments or
15 their symptoms affect his ability to perform basic work activities). At step two of the sequential disability
16 evaluation process, the ALJ must determine if an impairment is "severe." Id. An impairment is "not
17 severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work
18 activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); Social Security Ruling ("SSR") 96-
19 3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most
20 jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

21 An impairment is not severe only if the evidence establishes a slight abnormality that has "no more
22 than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; Smolen v.
23 Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). This
24 step two inquiry is a *de minimis* screening device used to dispose of groundless claims. Smolen, 80 F.3d at
25 1290. Plaintiff, however, has not, and cannot, point to any objective medical evidence in the record which
26 establishes the existence of significant work-related functional limitations due to his cluster headaches. As
27 such, any error here on the part of the ALJ was harmless.

28

### III. Dr. Wood's Declaration

Plaintiff provided the Appeals Council for the first time with a written declaration from his treating psychologist, Darlene Wood, Ph.D., which is dated August 17, 2006, which is just three days after the ALJ issued his decision. In that declaration, Dr. Wood stated that she began seeing plaintiff in early June 2004, and that she diagnosed him with a schizoaffective disorder. Tr. 290. Dr. Wood opined that plaintiff would not be able work full-time even in a job requiring "only very simple tasks," and where he could "work by himself." Tr. 291. She further opined that she has not advised plaintiff "to look even for part-time work," which she thought was "beyond his capacity," stating additionally that:

> . . . [I]t is difficult for him to be away from home for more than several hours at a time. When he is, his paranoia increases and the hallucinations and voices become more frequent and intense. If he had to be away from home eight hours per day, five days per week, 50 weeks per year, his paranoia would increase and he would be at serious risk of suffering a significant deterioration in his condition. He is able to function as well as he does now only because he is able to spend most of his time at home.

Tr. 291-92.

Dr. Wood opined as well that she believed "more likely than not" that "from May 1996 through the present," plaintiff would not have been able to maintain full-time gainful employment due solely to the signs and symptoms of his schizoaffective disorder. Tr. 292-93. In addition, Dr. Wood stated that "from May 1996 through the present," plaintiff had a marked limitation in social functioning, marked difficulties in maintaining concentration, persistence or pace, a marked limitation in his ability to interact and tolerate the production demands of a job "even if they were simple," and, indeed, no toleration for the stress of full-time work involving such demands. Tr. 293-94. Lastly, Dr. Wood opined that plaintiff's medications interfered with his ability to pay attention and concentrate, and that he could not maintain attention "on even simple one to two-step tasks in any job." Tr. 294.

As noted above, Dr. Wood's declaration is dated three days after the ALJ issued his decision. As such, the ALJ did not have the benefit of that declaration, and thus cannot be faulted for not reviewing it, since it was never before him. The Appeals Council, however, did review that declaration, providing the following reasons for rejecting it:

> The Appeals council has also considered Dr. Woods's [sic] "Declaration" submitted with the Request for Review. She asserts that you are both currently disabled and that you were disabled since 1994. The Appeals Council, however, does not accord this controlling weight. This opinion is not supported by the evidence of record in Dr. Wood's own treatment records. While she alleges that you have been unable to sustain

REPORT AND RECOMMENDATION
Page - 8

> work-related activities since May 1996, she has not provided supporting documentation for this conclusion. Council notes that Dr. Woods [sic] did not commence treating you until June 2004. Evidence of treatment prior to that date has been sparse. You were hospitalized in 1996 due to your mental impairment and received some counseling and treatment. As noted above, your diagnoses at that time included polysubstance abuse and suspected malingering with symptoms that appeared to be pretensions to avoid a jail sentence (Exhibit 3F). The record from 1996 until December 2003 contains no treatment records that show evidence of a mental impairment. There is nothing therein that supports Dr. Wood's assertions that you have been unable to make work related adjustments of any type from 1994 to the present.
>
> In 2003, you were directed to attend anger management due to an altercation with your girlfriend (Exhibit 7F). The report again suggests a problem with substance abuse rather than the psychiatric diagnosis described by Dr. Wood.
>
> Moreover, when Dr. Wood first saw you in June 2004, she assessed your Global Assessment of Functioning (GAF) score at 50, which is not consistent with her marked ratings. The Council notes that Dr. Wood's treatment notes show she has not performed a psychological evaluation supported with clinically appropriate findings, and is not your therapist. She sees you for medication management only. There is evidence that you have a case worker named Brian Collins who also signs the records generated by Dr. Wood. There is no evidence in those records of the very significant problems and limitations alleged in the Declaration. There is no showing that Dr. Wood has suggested that you need more aggressive treatment. In fact, the record suggests essential adjustment due to the medication prescribed, and as a further result of participation in Alcoholics Anonymous (See also 13F9, 15).
>
> Dr. Woods' notes also show participation in volunteer activities; this also suggests that the degree of impairment portrayed in the Declaration is not supported by the accompanying medical records. These records and previously submitted records show that Dr. Wood reported you have good relationships with others (Exhibit 13F4, 12, 15). Furthermore, the record shows occasional complaints of headaches associated with attempts to obtain prescription narcotics. Dr. Wood's comments relating to these incidences support the record of malingering as discussed by the Administrative Law Judge.
>
> Additionally, while Dr. Wood indicates that you have a life threatening condition, neuroleptic malignant syndrome, this is not supported by the evidence of record. Even assuming this could be established as a medically determinable impairment, there is no evidence that you suffer any work related limitations as a result.

Tr. 8-9. Plaintiff asserts these are not clear and convincing reasons for rejecting Dr. Wood's declaration. To the extent this Court may review the Appeals Council's denial of plaintiff's request for review, though, the undersigned disagrees that all of the above-stated reasons are improper.[3]

Plaintiff first points out that the Appeals Council failed to recognize that the "Brian Collins" whose signatures appear in the progress notes generated by Dr. Wood were those of plaintiff. See Tr. 227-31, 295-322. The Appeals Council thus seems to be incorrect in finding a "case worker" with that name had

---

[3] See Mathews v. Apfel, 239 F.3d 589, 594 (3rd Cir. 2001) (noting that no statutory authority, source of district court's review authority, authorizes district court to review Appeals Council decisions to deny review).

REPORT AND RECOMMENDATION
Page - 9

1 signed those notes. Plaintiff also correctly notes that it is unclear from the record whether he in fact needed more aggressive mental health treatment or, if he did, what that treatment would be, nor did the Appeals Council itself address this issue. The undersigned further agrees that merely because Dr. Woods saw plaintiff for "medication management only" is not a valid basis for discounting her medical opinion. That is, there is no requirement that Dr. Woods must be a therapist or conduct a psychological evaluation "supported with clinically appropriate findings" before being able to offer a medical opinion. See Sanchez v. Apfel, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000) (when mental illness is basis of disability claim, clinical and laboratory data may consist of diagnoses and observations of professionals trained in field of psychopathology); see also Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (opinion that is based on clinical observations supporting diagnosis of depression is competent psychiatric evidence).

Despite these erroneous findings, the Appeals Council did provide other, valid reasons for rejecting Dr. Wood's opinion. First, as pointed out by the Appeals Council, Dr. Wood's own progress notes do not support either the marked mental functional limitations she found plaintiff exhibited or her opinion that he is unable to work. See Tr. 227-31, 295-322; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ need not accept opinion of treating physician if it is inadequately supported by clinical findings). Indeed, those notes provide little in the way of comments or other clinical findings suggestive of the type of marked restrictions and inability to maintain employment Dr. Wood later found, or, for that matter, of any work-related limitations.

The Appeals Council also was not remiss in noting that there are no treatment records evidencing a mental impairment for the period since plaintiff's hospitalization in 1996 until December 2003, and that there is nothing in Dr. Wood's records that supports her assertions that plaintiff was "unable to make work-related adjustments of any type" from as early as 1994. It is true that retrospective medical reports may not be rejected merely on the basis that they are retrospective in nature. See Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988). However, "claimants who apply for benefits for a current disability after the expiration of their insured status" will be entitled to them only if they can "prove that the current disability has existed continuously since a date on or before the date that their insurance coverage lapsed." Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1462 (9th Cir. 1995).

Here, the Appeals Council did not reject the opinions in Dr. Wood's declaration solely because

they concern the period prior to plaintiff's date last insured. Rather, the Appeals Council properly noted that there is nothing in Dr. Wood's treatment records to link the marked restrictions and inability to work she found in mid-August 2006, not only to the period during which she treated plaintiff, but to the period prior to December 31, 1998, plaintiff's date last insured, let alone all the way back to 1996. That is, although a medical source can offer an opinion regarding a prior period of time, that opinion still must contain proper support in the record. Such is not the case here.

Plaintiff further argues, though, that there is other medical opinion source evidence in the record which corroborates the mental functional limitations found by Dr. Wood. Plaintiff points to a psychiatric evaluation performed by Cuong T. Nguyen, M.D., in late March 2004, in which plaintiff was found to be markedly limited in his ability to learn new tasks, exercise judgment and make decisions, perform routine tasks, relate appropriately to co-workers and supervisors, interact appropriately in public contacts, respond appropriately to and tolerate the pressure and expectations of a normal work setting, control his physical or motor movements, and maintain appropriate behavior. Tr. 220. A psychological evaluation performed by Terilee Wingate, Ph.D., in late June 2006, found plaintiff to be moderately limited in his ability to learn new tasks, exercise judgment and make decisions, and care for himself, and markedly limited in his ability to relate appropriately to co-workers and supervisors, interact appropriately in public contacts, respond appropriately to and tolerate the pressure and expectations of a normal work setting, control his physical or motor movements, and maintain appropriate behavior. Tr. 244.

These findings are in line with Dr. Wood's opinion that plaintiff is markedly limited in his ability to maintain social functioning, at least in those specific areas of social functioning identified by Drs. Nguyen and Wingate. Neither of these medical sources, however, indicated that plaintiff was markedly limited in the other mental functional categories as found by Dr. Wood. Nor did Dr. Nguyen or Dr. Wingate actually opine that plaintiff was incapable of performing all work as did Dr. Wood. As such, their opinions provide at most only partially support for the findings contained in Dr. Wood's declaration. Further, as discussed elsewhere herein, the Appeals Council did provide other valid reasons for rejecting the marked limitations and disability opinion provided by Dr. Wood.

Plaintiff also takes issue with the Appeals Council's reference to evidence of malingering on his part in the record. This evidence, plaintiff asserts, consists of a "[r]ule out malingering" diagnosis, which

"is not even a scintilla of evidence of non-disability." Tr. 181; (Dkt. #10, p. 16). However, there is more evidence of malingering in the record than this "rule out" diagnosis would indicate. For example, in that same medical record, the examining physician earlier commented that she thought the "differential diagnosis" was "quite broad," and needed "to include malingering with the obvious goal of getting out of jail." Tr. 180. It also was noted at the time that plaintiff "seemed to have no motivation to do anything to change his life," and that "[d]ue to lack of motivation," his prognosis was poor. Tr. 159-60.

Plaintiff was seen "to be quite manipulative in some of his presentation and demands" by another treatment provider then as well, and further was observed to be "clearly . . . unable or unwilling to accept any responsibility for his consequences." Tr. 177. Accordingly, the undersigned does find that the record contains affirmative evidence of malingering. That evidence, furthermore, calls into question at the very least Dr. Wood's opinion that plaintiff has had marked mental functional limitations and has been unable to perform any work since May 1996, since that period covers the time during which these observations of plaintiff's malingering behavior were made.

The next question is whether, as plaintiff argues, the substantial evidence in the record does not support the ALJ's mental residual functional capacity assessment or his adverse credibility and disability determinations, given the clinical notes Dr. Wood submitted to the ALJ before he issued his decision, and Dr. Wood's declaration and additional clinical notes from her submitted for the first time to the Appeals Council. This Court may address these issues, as a reviewing court may consider new evidence submitted for the first time to the Appeals Council in determining whether or not the ALJ's decision is supported by substantial evidence. See Ramirez v. Shalala, 8 F.3d 1449,1451-52 (9th Cir. 1993) (because additional materials were examined by Appeals Council in denying claimant's request for review, court may consider them on review); Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000) (same); Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996) (evidence submitted for first time to Appeals Council is part of record on review to federal court).

As noted above, Dr. Wood found plaintiff to be markedly limited in maintaining concentration, persistence or pace, opining further that he could not perform a full-time job requiring "only very simple tasks." She also found that plaintiff had marked difficulties in maintaining social functioning, and that if he had to be away from home for a full workday, he would be "at serious risk of suffering a significant

deterioration in his condition," even if he was in a job which allowed to work by himself. Lastly, Dr. Wood found plaintiff could not tolerate the stress of production demands of full-time work. These limitations, as can be seen, clearly are not consistent with the mental residual functional capacity with which the ALJ assessed plaintiff, wherein the ALJ found him to be capable of understanding, remembering, and carrying out simple instructions, making simple work-related decisions necessary to function in unskilled work, responding appropriately to a supervisor and a few co-workers, and dealing with changes in a routine work setting not dealing with the general public. Tr. 24.

As discussed above, however, Dr. Wood's own progress notes fail to support the mental functional limitations she found, let alone her opinion that plaintiff could not work and her opinion that plaintiff had been so disabled since May 1996. Also as discussed above, no other medical opinion source in the record found plaintiff to be as limited in plaintiff's ability to maintain his concentration, persistence or pace or in his ability to tolerate work stress. In addition, the record does contain evidence of malingering that further calls into question Dr. Wood's findings and opinion. On the other hand, the other medical opinion source evidence in the record does support marked limitations in at least some social functioning task categories. Accordingly, in that one area it appears substantial evidence may not support the ALJ's residual functional capacity assessment, although the undersigned notes that plaintiff did not specifically challenge the ALJ's reasons for rejecting that other medical opinion source evidence. Ordinarily, this might warrant remand to the Commissioner for re-consideration of that evidence. For the reasons set forth below, however, remand for an outright award of SSI benefits is warranted here, although as discussed in the next section, additional proceedings concerning the award thereof are still needed.[4]

IV.     This Matter Should Be Remanded for an Award of Benefits

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in

---

[4] The undersigned declines to determine whether the additional evidence from Dr. Wood submitted from plaintiff shows the ALJ's determination that plaintiff was not entirely credible is unsupported by substantial evidence. This is because the ALJ did not appear to expressly discount plaintiff's credibility on the basis that his symptoms and complaints were inconsistent with the objective medical evidence in the record. See Tr. 25. In addition, plaintiff has not argued with any specificity why the stated reasons the ALJ did provide for discounting his credibility were improper.

which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because, as explained below, the evidence in the record makes clear that the ALJ would be required to find plaintiff disabled in regard to his application for SSI benefits, this matter should be remanded to the Commissioner for an award of such benefits. However, as explained in further detail below, remand to the Commissioner for certain other further administrative proceedings is needed as well.

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The record contains a mental residual functional capacity assessment form completed by Thomas Clifford, Ph.D., in late October 2004, and affirmed by Trevelyan Houck, Ph.D., in late December 2004. In

Section I of that form, the "summary conclusions" section, Drs. Clifford and Houck found plaintiff to be moderately limited in his ability to: perform activities within a schedule; maintain regular attendance; be punctual within customary tolerances; complete a normal workday and workweek; perform at a consistent pace; and accept instructions and respond appropriately to criticisms from supervisors. Tr. 141. In Section III of the form, the "functional capacity assessment" section, Dr. Clifford and Dr. Houck further found that plaintiff had "the capacity to perform simple & detailed tasks," that he would "work best away from intense public contacts," and that he would "work best in settings not requiring more than minimal supervisor/co-worker contacts." Tr. 142.

In his decision, the ALJ stated that his findings were consistent with those of Dr. Clifford and Dr. Houck, and that because he found "no objective evidence in the record to contradict" those findings, they were accorded "considerable weight." Tr. 26. At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. Tr. 356. In response to that hypothetical question, the vocational expert testified that an individual with those limitations, and with the same age and education as plaintiff, could perform the jobs of hand packager and small products assembler, both of which the vocational expert also testified involved unskilled work. Tr. 356-57.

In response to additional questioning from plaintiff's counsel, the vocational expert further testified that when the same hypothetical individual also has a moderate limitation in his or her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, that individual "most likely" would "have a hard time holding" the two jobs identified above, as well as other unskilled work. Tr. 366-68. The vocational expert testified in addition that the same would be true if such an individual also just had a moderate limitation in his or her ability to complete a normal workday or workweek and conform to a consistent pace (Tr. 368), or just had a moderate limitation in his or her ability to accept instructions and respond to criticism from a supervisor (Tr. 369).

The moderate limitations upon which the vocational expert based his testimony that the hypothetical individual described above would be precluded from performing not only the two jobs the vocational expert identified, but all unskilled work, are the same as those found by Dr. Clifford and Dr. Houck. In addition, the ALJ, as discussed above, limited plaintiff to performing unskilled work, and not

only found the findings of Dr. Clifford and Dr. Houck to be consistent with his residual functional capacity findings, but accorded them "considerable weight" as well. Given this, the undersigned finds that the substantial evidence in the record does not support the ALJ's determination that plaintiff was capable of performing the two jobs the vocational expert identified. Tr. 27-28. Indeed, given the above, the undersigned finds the Commissioner has failed to meet his burden of establishing that plaintiff is capable of performing other jobs existing in significant numbers in the national economy.

Citing to the Commissioner's Program Operations Manual System ("POMS"), defendant argues that in stating the findings of Dr. Clifford and Dr. Houck were consistent with his own, the ALJ properly focused on Section III of the mental residual functional capacity assessment form they completed, rather than on Section I thereof. See POMS, DI 24510.060(B)(2) (stating that narrative written in Section III is actual mental residual functional capacity assessment as it explains summary conclusions made in Section I). It is true that the Ninth Circuit has recognized the POMS as "persuasive authority," even though it "does not have the force of law." Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006). Nevertheless, it is not entirely clear that the narrative statements contained in Section III are to be adopted to the complete exclusion of the findings contained in Section I, rather than to be read merely as an explanation thereof.

In any event, the ALJ did not make clear that this is what he was doing, and thus the undersigned finds defendant's argument here to be the type of *post hoc* rationalization the Ninth Circuit disfavors. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (error to affirm ALJ's credibility decision based on evidence ALJ did not discuss). The undersigned also finds unpersuasive the Appeals Council's explanation for why it found the ALJ did not in fact adopt the findings of Drs. Clifford and Houck:

> The Administrative Law Judge did not indicate that he had adopted the State agency [Dr. Clifford's and Dr. Houck's] findings. He only expressed that his findings were consistent and therefore accorded "considerable weight" to the State agency opinion. Giving weight to an opinion is not the equivalent of outright adoption of all the findings. The regulations require only that such non-examining opinions be considered, and weight assigned based on supporting rationale (20 CFR 404.1527(f)). Furthermore, these opinions must be considered in light of all of the other evidence including any conflicting evidence.

Tr. 9. It is not clear what the actual difference is between "adopting" findings and determining them to be consistent with one's own or giving them "considerable weight." Indeed, if an ALJ gives certain medical findings considerable weight and expressly states that they are consistent with those he or she has found to

be shown by the record, the only logical conclusion is that the ALJ adopted them.

The ALJ, furthermore, failed to give any indication that he was merely considering the findings of Dr. Clifford and Dr. Houck, rather than actually adopting them. Indeed, the ALJ's express statements, as explained above, point to the contrary conclusion. Finally, the Appeals Council notes that those findings must be considered in light of other, conflicting evidence in the record. It appears, however, that the ALJ did do this, but determined that the findings of Drs. Clifford and Houck were more accurate. The Appeals Council, in addition, does not point to other medical opinion source evidence which describes limitations that are less restrictive than those found by Dr. Clifford and Dr. Houck. Rather, as discussed above, to the extent other medical opinion source evidence does conflict with their findings, that evidence indicates that plaintiff's mental functional limitations are even more restrictive, at least in the area of social functioning. As such, the ALJ's disability determination cannot be upheld here.

The undersigned, accordingly, finds that remand to the Commissioner for an award of SSI, but not disability insurance, benefits is appropriate in this case on the basis of plaintiff's mental impairments and limitations. First, the undersigned notes that the objective medical evidence in the record does not support plaintiff's alleged onset date of disability. As discussed above, plaintiff has alleged that he first became disabled on January 1, 1994. However, there is no objective medical evidence in the record to support this allegation. The earliest such evidence comes from the disability opinion Dr. Wood provided in her mid-August 2006 declaration. Even in that declaration, though, Dr. Wood stated that plaintiff had been unable to work since only May 1996. In addition, also as discussed above, Dr. Wood lacked a proper foundation upon which base that opinion.

In fact, no other medical source in the record has provided an opinion concerning plaintiff's work-related mental functional limitations prior to late March 2004. Dr. Clifford and Dr. Houck stated that the limitations they found were for the "current" period, which at the time was late October 2004. <u>See</u> Tr. 144. They also specifically indicated that there was insufficient evidence regarding the existence of any mental impairments for the period of January 1, 1994 through December 1998, or plaintiff's alleged onset date of disability through his date last insured. <u>Id.</u> Thus, while the record shows plaintiff was disabled in light of the findings made by Drs. Clifford and Houck, it also appears plaintiff is not entitled to disability insurance benefits on that basis, because he has not established that he became disabled prior to or as of the date his

insured status expired as a result thereof.

That being said, because there is no such time requirement for receipt of SSI benefits, remand to the Commissioner for a determination as to payment of those benefits is needed. It should be noted, however, that due to the lack of objective medical evidence concerning plaintiff's mental impairments for the period prior to late March 2004, discussed above, a determination regarding plaintiff's onset date of disability still is needed before such benefits can be paid.[5] In addition, also as discussed above, because the ALJ erred in finding plaintiff did not have a medically determinable hand impairment, on remand, a determination must be made as to whether that impairment was severe, and, if so, what impact that impairment had, if any, on plaintiff's residual functional capacity and his ability to perform other jobs existing in significant numbers in the national economy. Since evidence of plaintiff's hand impairment existed prior to the expiration of his insured status, on remand, the Commissioner should determine if plaintiff is entitled to both disability insurance and SSI benefits based on that impairment.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for an award of SSI benefits and for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit

---

[5] Pursuant to 42 U.S.C. § 1382(c)(7), an application for SSI benefits of a claimant who is found eligible therefor "shall be effective on the later of . . . the first day of the month following the date" the application is filed, or "the first day of the month following the date" the claimant becomes eligible for SSI benefits. As noted above, plaintiff filed his application for SSI benefits on July 14, 2004. However, as discussed above, although the earliest evidence of significant mental functional limitations dates from late March 2004, the limitations Dr. Clifford and Dr. Houck found are for the "current" period of late October 2004. As such, it is not clear exactly when plaintiff's application for SSI benefits should be deemed effective, since, for example, one of the moderate limitations found by Drs. Clifford and Houck – i.e., that concerning the ability to accept instructions and respond appropriately to criticism from supervisors – appears to be substantially similar to the marked limitation in the ability to relate appropriately to supervisors found by Dr. Nguyen in late March 2004. Tr. 220. Accordingly, while plaintiff certainly would seem to be eligible for SSI benefits starting as late as November 1, 2004 (the first day of the month after the date Dr. Clifford completed the mental residual functional capacity assessment form), he could be eligible for such benefits as early as August 1, 2004 (the first day of the month following the date plaintiff filed his application for SSI benefits).

REPORT AND RECOMMENDATION
Page - 18

imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **December 12, 2008**, as noted in the caption.

DATED this 14th day of November, 2008.

/s/ Karen L. Strombom
Karen L. Strombom
United States Magistrate Judge